J-A08026-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DOMINIQUE ELLIS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| LIBERTY MUTUAL GENERAL | : | |
| INSURANCE COMPANY AND CLARE | : | |
| MACNABB | : | No. 3360 EDA 2019 |
| | : | |
| Appellant | : | |

Appeal from the Order Entered November 6, 2019
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  No. 180201417

BEFORE:   PANELLA, P.J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY MURRAY, J.:                **FILED:  MAY 14, 2021**

Liberty Mutual General Insurance Company and Clare MacNabb[1] (collectively, Appellants) appeal from the order granting a new trial on behalf of Appellee, Dominique Ellis (Ellis).  Upon review, we affirm in part, reverse in part, and remand to the trial court.

The trial court summarized the factual and procedural history as follows:

> On January 15, 2016 [Ellis] was standing in the middle of a no-driving lane waiting to cross the street when she was hit by a car.  The car was driven by Timothy Murray [(Murray)], who settled with [Ellis] in an earlier lawsuit.  As a result of the accident, [Ellis] sustained injuries, including to her face, orbital bone, and zygomatic arch.  She also sustained scarring on her cheek in the

---

[*] Former Justice specially assigned to the Superior Court.

[1] Ms. MacNabb is a claims department employee of Liberty Insurance.  **See** Complaint, 2/15/18, at ¶ 5.

same area as the fractures. [Ellis] is covered under her mother's Liberty [] Insurance policy, including Underinsured Motorist Benefits. The scar remained noticeably visible at the time of trial.

On February 15, 2018, [Ellis] filed a Complaint against [Appellants. Ellis] alleged an underinsured motorist claim, bad faith, and unfair trade practices by [Appellants] after she was hit by a car driven by [] Murray and [Appellants] refused to pay Underinsured Motorist Benefits under their contract. [Appellants] filed a Motion for Summary Judgment, which was denied without prejudice on August 28, 2019. The case was called to trial on September 13, 2019. [Ellis] moved for a directed verdict on liability at the close of the evidence. The [c]ourt granted the motion, finding Murray negligent *per se* and that his negligence was a substantial factor of the harm caused to [Ellis]. The jury deliberated on contributory negligence and itemized the damages. The jury came to a verdict on September 18, 2019, finding Murray 80% negligent and [Ellis] 20% negligent. The jury awarded [Ellis] $10,000 for pain and suffering, $5,000 for loss of life's pleasures, $0 for embarrassment and humiliation and $0 for disfigurement. [Ellis] filed a post-trial motion requesting a new trial, which [Appellants] opposed. The [c]ourt granted the request for a new trial. [Appellants] filed the instant appeal on November 18, 2019. [Appellants] timely filed their Concise Statement of Errors Complained of on Appeal on December 23, 2019.

Trial Court Opinion, 6/15/20, at 2-3 (citations to notes of testimony omitted).

On appeal, Appellants present a single question for review:

Did the trial court err and abuse its discretion in awarding a new trial on all issues where the jury's verdict of zero damages for disfigurement is not against the weight of the evidence and where only a new trial limited to damages was sought and a new trial limited to damages for disfigurement was appropriate?

Appellants' Brief at 5.

Appellants make two arguments: 1.) the trial court abused its discretion in determining the jury's verdict of zero dollars for disfigurement damages was against the weight of the evidence; and 2.) if the trial court did not abuse

its discretion in determining the jury's verdict of zero dollars for disfigurement damages was against the weight of the evidence, a new trial should be limited to only that issue.  **See** Appellants' Brief at 18.

In reviewing the trial court's grant of a new trial, we recognize:

> It is a fundamental precept that a decision to order a new trial lies within the discretion of the trial court.  Thus, it is well settled that the proper standard of appellate review is determining whether the trial court abused its discretion.  In **Harman ex rel. Harman v. Borah**, [] 756 A.2d 1116, 1121-22 ([Pa.] 2000), our Court explained the process of reviewing a motion to grant or deny a new trial.  First, the underlying matter that formed the basis for the trial court's decision is to be reviewed — that is, whether a mistake occurred and whether that mistake was sufficient to order a new trial.  If the appellate court agrees with the trial court that an error occurred, it proceeds to determine whether the trial court abused its discretion in ruling on the request for a new trial.  **Id.** at 1222[.]  An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will.  Merely because an appellate court would have reached a different result than the trial court does not constitute a finding of an abuse of discretion.  Also, where the record adequately supports the trial court's reasons and factual basis, the court did not abuse its discretion.
>
> As to our scope of review, if the trial court cites to specific reasons for its decision on a request for a new trial, and it is clear that the decision of the trial court is based exclusively on those reasons, the appellate court may reverse the trial court's decision only if it finds no basis on the record to support any of those reasons.

**Mader v. Duquesne Light Company**, 241 A.3d 600, 607 (Pa. 2020) (some citations omitted).

Appellants assert that the trial court "invaded the province of the jury in ordering a new trial on the basis that the markings on Ms. Ellis' face

constituted a compensable injury for disfigurement." Appellants' Brief at 21. Appellants claim the trial court abused its discretion because "the award of zero damages for disfigurement is not against the weight of the evidence." *Id.* at 18.

Our Supreme Court has stated:

> While a jury's verdict and damages award are generally insulated from challenge, the grant of a new trial may be required to achieve justice in those instances where the original trial, because of taint, unfairness, or error, produces something other than a just and fair result, which is the principle goal of judicial proceedings. As we [have] explained [], a jury verdict may be set aside as inadequate when it appears to have been the product of passion, prejudice, partiality, or corruption, or where it clearly appears from uncontradicted evidence that the amount of the verdict bears no reasonable relation to the loss suffered by the plaintiff. Where the jury's verdict is so contrary to the evidence as to shock one's sense of justice a new trial should be awarded. We cautioned that it was within the province of the jury to assess the worth of the testimony and to accept or reject the estimates given by the witnesses, and if the verdict bears a reasonable resemblance to the proven damages, it is not the function of the court to substitute its judgment for the jury's. Yet, where the injustice of the verdict stands forth like a beacon, a court should not hesitate to find it inadequate and order a new trial.

*Mader*, 241 A.3d at 612-13 (citations omitted).

The Supreme Court has defined disfigurement as "[t]hat which impairs or injures the beauty, symmetry, or appearance of a person or thing; that which renders unsightly, misshapen, or imperfect, or deforms in some manner." *Walsh v. City of Philadelphia*, 585 A.2d 445, 453 (Pa. 1991) (citing *Black's Law Dictionary*, 5th. Ed.).

- 4 -

Here, after consideration of Ellis' post-trial motion, including oral argument, the trial court "ordered a new trial because the disfigurement award was against the weight of the evidence given the obvious scarring on [Ellis'] face." Trial Court Opinion, 6/15/20, at 1. The court explained:

> Scarring is a compensable type of disfigurement. Pa.R.C.P. 223.3; *see Stoughton v. Kinzey*, 445 A.2d 1240, 1242 (Pa. Super. 1982) (facial scarring is a form of disfigurement)[.]
>
> A new trial is warranted where a jury, against the weight of the evidence, does not award damages for scarring. *Yacabonis v. Gilvickas*, 101 A.2d 690, 693 (Pa. 1954) (affirming new trial where jury did not make any award for disfigurement for a scar over plaintiff's eye and a scar near her hairline)[.]
>
> Though [Appellants] do not categorize it as scarring, [Ellis] suffered indisputable, objective and significant markings on her face as a result of the accident. While [Appellants] argued that the scar was concealable, [Ellis'] scar is nonetheless compensable. The jury's award of $0 for disfigurement under these circumstances shocks the [c]ourt's sense of justice, was against the weight of the evidence, and is grounds for a new trial.

Trial Court Opinion, 6/15/20, at 3-4 (some citations omitted).

The record supports the trial court's reasoning and its factual basis for concluding that the jury's verdict was contrary to the weight of the evidence. We first emphasize, as did Ellis, that Appellants "did not put on any evidence or call any witnesses [and] . . . did not challenge the causation of Ms. Ellis' scar being caused by this accident. Instead, [Appellants] made arguments as to the value of the injury, arguing Ms. Ellis was able to conceal the scar with makeup . . ." Ellis' Brief at 6.

In contrast, Ellis presented five witnesses. The first, Joseph Decker, testified that on January 15, 2016, he saw Ellis get hit and "fly into the air like a rag doll." N.T., 9/16/19, at 66. He said Ellis "went kaboom," and he "hurried up towards the car so [he] could protect her from the vehicle." *Id.*

Timothy Murray, who drove into Ellis, was unavailable at trial; as a result, his March 3, 2017 deposition testimony was read into the record. *See* N.T., 9/17/19, at 118-143. Murray testified that after striking Ellis, "she was initially laying parallel to the ground, and then she was crouched in the fetal position on her own and at that point there was a scrape on her face." *Id.* at 139.

Dr. James Robinson, a chiropractor, testified he first treated Ellis four days after the accident, on January 19, 2016. N.T., 9/16/19, at 99. He testified that Ellis presented with, *inter alia*, "facial abrasions on the right cheek and side of the face, the largest of which was approximately one-inch in diameter and scabbed with some areas of redness and bleeding. She has multiple small pin-head to pea-sized scab abrasions on the right side of her face." *Id.* at 104-05. When shown a photograph of "what Ellis' face looked like when [he] marked the facial abrasions as being resolved," Dr. Robinson affirmatively identified "scarring in [the] region . . . of her face where [Ellis] said she suffered multiple facial fractures." *Id.* at 140; Ellis' Exhibit #4.

Ellis' mother, Yolanda Hill, testified that when she arrived at the hospital on the day of the accident, Ellis' face was "red and bloody and it was just, it

was real nasty." *Id.* at 160. At trial, Ms. Hill "marked with a red pen," an "annotated" photo of Ellis' healed face, in which Ms. Hill indicated "the marks that she [saw] that were not there before the accident." N.T., 9/17/19, at 49-51; Ellis' Exhibit #4B.

Finally, Ellis testified that when the scrapes and bleeding on her face healed, "it was still, it was not the color of my skin." N.T., 9/17/19, at 174. She stated that after the accident she began to wear a lot of makeup because "the color of my scar was not all the way back to the regular color of my face." *Id.* at 175.

Subsequently, at oral argument on Ellis' post-trial motion, the following exchange occurred between the court and Appellants' counsel:

> THE COURT: It wasn't contested that these marks were the result of the accident; is that correct? I think you may have been downplaying the significance of them.
>
> [COUNSEL]: As clearly was the jury, but, yes, that's correct. Well some of those marks; not all of the marks.

N.T., 11/5/19, at 5.

Consistent with the foregoing, the trial court determined the jury's "decision to discount the clear and significant discoloration/scarring on [Ellis'] face was against the weight of the evidence." N.T., 11/5/19, at 15; *see also* Trial Court Opinion, 6/15/20, at 1 (explaining the court ordered a new trial "because the disfigurement award was against the weight of the evidence given the obvious scarring" on Ellis' face). Our review of the trial testimony and exhibits, including Exhibit #4, the photograph depicting Ellis' facial

scarring, "adequately supports the trial court's reasons and factual basis." ***Mader***, 241 A.3d at 607. Thus, the court did not abuse its discretion in ordering a new trial because the jury's verdict on disfigurement was against the weight of the evidence.

Next, Appellants argue that if this Court determines — as we have — that the trial court did not abuse its discretion in finding the jury's disfigurement verdict to be against the weight of the evidence, the court nonetheless erred in awarding "a new trial in its entirety." ***See*** Trial Court Opinion, 6/15/20, at 4. Appellants assert the court "erred and abused its discretion in awarding a new trial on all issues, where Ms. Ellis only sought a new trial limited to damages, and where a new trial should have been limited to damages for disfigurement." Appellants' Brief at 33. Appellants emphasize "the parties had a fair opportunity to litigate the issues of negligence and comparative negligence, and the jury apportioned damages accordingly. Moreover, neither [] Ellis nor [Appellants] challenged the jury's finding of comparative fault, and [] Ellis did not raise any trial errors to suggest that anything other than a fair determination of liability had been made." ***Id.*** at 34 (citation to case law omitted). Further, Appellants claim a new trial should be limited to "this discrete issue" of disfigurement damages "because the trial court agreed with [Appellants] that the jury's award of zero dollars for embarrassment and humiliation is not against the weight of the evidence, and

because [] Ellis did not challenge the adequacy of the damages awarded for pain and suffering or loss of life's pleasures." ***Id.*** at 37.[2]

The Pennsylvania Rules of Civil Procedure provide:  "After trial and upon the written Motion for Post-Trial Relief filed by any party, the court may . . . order a new trial as to all or any of the issues[.]"  Pa.R.C.P. 227.1.  "The trial court's decision whether to limit a new trial to a particular issue or grant a new trial as to all issues will not be reversed absent an abuse of discretion." ***Chiaverini v. Sewickley Valley Hospital***, 598 A.2d 1021, 1024 (Pa. Super. 1991).  "A new trial may not be required on all issues, but only those that resulted from legal error."  ***Mader***, 241 A.3d at 613.  The Pennsylvania Supreme Court has "consistently held that where only the trial errors disclosed in the record deal with specific and discrete issues, the grant of a new trial should be limited to those issues."  ***Id.*** (citations omitted).  The Court explained:

> In the context of determining whether a new trial should be granted solely for damages, or for damages and liability, we have declared the following standard: A new trial limited to the issue of damages will be granted where (1) the issue of damages is not

_____

[2] The trial court found Appellants waived this issue because "they argued against a new trial generally, but never requested or argued  . . .  that it should be limited to a disfigurement damage award."  Trial Court Opinion, 6/15/20, at 4 (footnote omitted).  However, the Pennsylvania Supreme Court has stated that when a trial court "determined that a new trial must be granted, then the law governing the scope of new trials, not the parties' requests, [] govern[s]."  ***Catalano v. Bujak***, 642 A.2d 448, 450 (Pa. 1994). Thus, there is no waiver.

"intertwined" with the issue of liability; and (2) where the issue of liability has been fairly determined or is free from doubt.

We believe it appropriate to apply a similar standard to the question of whether a new trial should be granted for all damages, or just certain damages tainted by jury error. Thus, we hold that, when faced with the question of the full or partial granting of a new trial on damages, a trial court should discern whether the properly awarded damages in the first trial were "fairly determined," and, if so, whether they are sufficiently independent from, and are not "intertwined" with, the erroneously determined damages.

*Mader*, 241 A.3d at 614 (citation omitted).[3]

In this case, the trial court granted Ellis' motion for a directed verdict finding Murray negligent *per se*. **See** N.T., 9/17/19, at 233, 239; N.T., 9/18/19, at 71-72 ("[A]s a matter of law, [] Murray was negligent and [] Murray's negligence was a factual cause of some harm to [] Ellis."). At the conclusion of trial, the jury returned a verdict finding Murray 80% negligent

_____

[3] The Court further opined:

We find this standard strikes the appropriate balance between allowing a prevailing party to remedy jury errors through a new trial, while at the same time upholding jury determinations when possible. Specifically, a plaintiff who rightfully deserves a new trial will have those matters erroneously resolved by a jury reheard by a new jury. Such an approach is also fair to the defense, which will not be required to give its opponent a second chance to recover damages that were properly established and found by the jury in the first trial, and which are otherwise independent from the erroneous damages. Finally, this approach is beneficial to the justice system as a whole, as it preserves the court's and the parties' resources, narrows the scope of retrial, and promotes the finality of jury awards to the fullest extent possible.

*Mader*, 241 A.3d 614-15.

- 10 -

and Ellis 20% negligent. **See** Verdict Slip, 9/18/19, at Question #5; N.T., 9/18/19, at 87. The jury awarded Ellis $10,000 in damages for pain and suffering, $0 for embarrassment and humiliation, $5,000 for loss of life's pleasures, and $0 for disfigurement. **See** Verdict Slip, 9/18/19, at Question #6; N.T., 9/18/19, at 88.

In her motion for post-trial relief, Ellis requested the court "grant a new trial on damages in the instant matter because the record does not contain any evidence to support the verdict on damages and the jury's zero-dollar awards shock the conscious." Motion for Post-Trial Relief, 9/27/19, at ¶ 45.

After hearing oral argument on the motion, the court stated:

> I agree with the [Appellants] with respect to embarrassment and humiliation. The jury was free to discount that, either not to believe [Ellis] or give it no weight at all. However, their decision to discount the clear and significant discoloration/scarring on her face was against the weight of the evidence. Those are encompassed by the term "disfigurement."
>
> While I don't remember whether my specific instruction used those terms, clearly I think the model standard instruction comments and I think some case law also makes clear that this type of injury would come under disfigurement. For those reasons, I am granting the motion for post-trial relief. I am ordering a new trial.

N.T., 11/5/19, at 15-16.

The court subsequently edited and signed the proposed order Ellis submitted as an attachment to her motion. **See** Order, 11/6/19. The typewritten order submitted by Ellis read:

> **AND NOW**, this _____ day of _____, 2019, upon consideration of [Ellis'] Motion for Post-Trial Relief and any

response thereto, it is hereby **ORDERED** and **DECREED** that <u>Judgment Not Withstanding the Verdict on Damages</u> is **GRANTED**.

It is further **ORDERED** and **DECREED** that the matter shall be listed for a new trial <u>on the issues of damages</u>.

*Id.* (original wording underlined).

In executing the order, the court crossed out the words "Judgment Not Withstanding the Verdict on Damages," and inserted, "the motion"; the court also crossed out "on the issues of damages" at the end of the second sentence. With handwritten edits, the order signed by the court reads:

**AND NOW**, this ___ day of _____, 2019, upon consideration of [Ellis'] Motion for Post-Trial Relief and any response thereto, it is hereby **ORDERED** and **DECREED** that <u>the motion</u> is **GRANTED**.

It is further **ORDERED** and **DECREED** that the matter shall be listed for a new trial.

*Id.* (underlined to clarify).

We find the trial court abused its discretion in in awarding "a new trial in its entirety." ***See*** Trial Court Opinion, 6/15/20, at 4. As discussed above, the court entered a directed verdict finding Murray negligent *per se*, and the jury made a contributory negligence determination which neither party challenged, such that the issue of liability was fairly determined and free from doubt. ***Mader***, 241 A.3d at 614. Further, the issue of disfigurement damages is not intertwined with liability, and the jury's disfigurement damage award is discrete and independent from the jury's other damage determinations. The awards for pain and suffering, embarrassment and humiliation, and loss of

life's pleasures were fairly determined and not so intertwined with the disfigurement damages as to warrant a new trial. **Mader**, 214 A.3d at 618.

In sum, the trial court did not abuse its discretion in ordering a new trial on the issue of disfigurement damages, but erred in ordering a new trial as to liability and damages for pain and suffering, embarrassment and humiliation, and loss of life's pleasures. We therefore remand to the trial court for a new trial solely on the issue of disfigurement damages.

Order affirmed in part, reversed in part, and remanded to the trial court for further proceedings consistent with this decision. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>5/14/21</u>